Ralph R. BROWN, Appellant,

v.

**IOWA LEGISLATIVE COUNCIL and Legislative Service Bureau, Appellees,**

**Election Data Services, Inc., Intervenor–Appellee.**

No. 91–647.

Supreme Court of Iowa.

Oct. 21, 1992.

William B. Serangeli and Michael E. Marshall of Smith, Schneider, Stiles, Mumford, Schrage, Zurek, Wimer & Hudson, P.C., Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Kathy Mace Skinner, Asst. Atty. Gen., for appellees Iowa Legislative Council and Legislative Service Bureau.

Mark E. Schantz, Des Moines, for intervenor-appellee Election Data Services, Inc.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

A citizen taxpayer seeks access to computer data purchased with public funds by the General Assembly for use in legislative redistricting. The trial court determined that the data was a trade secret, owned by the intervenor-vendor that prepared it. The trial court refused to order disclosure and we affirm.

A provision in the Iowa Constitution, article III, section 35, requires the General Assembly to establish election districts every ten years following, and on the basis of, the United States decennial census. To comply with this mandate the General Assembly adopted a procedure, codified as Iowa Code chapter 42 (1991), for the public development and adoption of redistricting plans. This procedure accords the legislative service bureau (bureau) a prominent role in the process. Iowa Code § 42.2.

In May of 1990, the Iowa legislative council (council), an administrative arm of the legislature that oversees the direction and control of the bureau, entered into a service agreement with Election Data Services, Inc. (EDS), a District of Columbia corporation. See Iowa Code § 2.42(1). For $600,000 EDS agreed to provide data bases and computer and programming services to utilize modified United States 1990 census data in drafting the redistricting plan. The agreement required the development of geographic and population data bases in a form that the bureau could utilize with specified computer software to develop redistricting maps that conform to the requirements of chapter 42.

Although the bureau is forbidden to use any political criteria in drafting its redistricting plan, the agreement provided that EDS would also generate a political data base derived from various election returns which can be integrated with the population and geography data bases. See Iowa Code § 42.4(5). The political data base permits the four legislative caucuses (Republican and Democrat of the Iowa senate and Iowa house) to analyze the political effects of alternative redistricting plans prepared by the bureau. The agreement provided for unlimited access to the data bases by the four legislative caucuses and their staff members, none of whom are members of the council.

The use of computers to help generate a redistricting map requires the development of a base geographic unit. The bureau refers to the base unit as a "redistricting data unit" (RDU). RDUs are ordinarily townships in rural areas, precincts in urban areas, and other defined tracts, sometimes called "pieces," of real estate. Each "piece" is an RDU. EDS's package allows

the operator to do redistricting piece by piece. The RDU contains a population figure for people who live within the RDU. EDS's program allows the operator to add and subtract RDUs to create an election district that corresponds to the factors demanded by the Iowa Constitution in article III section 34, as amended: equal population between districts; compactness; and contiguity.

The program also contains analytical functions. It uses three basic forms of data: geographical; population; and political. The unique aspect of the program is the way in which it interrelates the different forms and sources of information. We emphasize that the information composing the data base itself comes from public sources and is entirely available to plaintiff. It is the *process* by which the information is correlated that defendant alleges is proprietary and protected from disclosure.

The data bases in machine-readable form are only readable by Geoddyssey, the EDS version of Geo–District software which plaintiff does not have. For reasons relating to confidentiality the data base is encrypted, or coded, as required by contract with the original maker of the software.

Brown is no casual interloper; he has been privately and publicly involved in the redistricting process since 1963. His involvement here is as a private citizen. He intended to present his input through participation in the public hearing mandated by Iowa Code section 42.6(4)(a).

Brown requested the bureau to provide him with the data bases as edited and corrected. As a part of his request Brown sought to examine and copy the redistricting software and redistricting data bases provided by EDS as well as any enhancements performed by EDS. The request specified that Brown was not seeking software provided under third-party license agreements and that he sought these records in a computer-readable medium.

In response to Brown's request the bureau indicated it was developing a policy on releasing the requested information. The policy eventually approved by the council provided for public disclosure of a wide variety of redistricting information, but forbade disclosure of EDS's software and data bases in machine-readable form. Under the policy a citizen has access to all of the population and geographic information used by the bureau in its redistricting efforts. A citizen also has access to the information in the political data bases provided to the caucuses for their evaluation. In addition to the population and geographic data bases, EDS also provided the bureau with the ability to analyze and confirm the appropriateness of EDS's assignment of census blocks to RDUs. The correlation in machine-readable format was made available to Brown so that he could independently verify the assignments.

Upon being informed of the policy, Brown made a final, informal attempt to obtain the requested information. He brought this suit after he was again denied access to the information.

■ Brown claimed he was entitled to the information because it was a public record. *See* Iowa Code §§ 22.1, 22.2 (1991). The custodian of such a record, however, is required to keep it confidential if the record is a trade secret recognized and protected by law. *See* Iowa Code § 22.7(3) (1991).

I. In order to establish the trade secret defense, defendants and the intervenor offered clauses from similar agreements between EDS and other public bodies,[1] an offer resisted on the claim they were hearsay. Brown contends these items are written assertions offered by defendant "to convince the district court of the truth of the matters asserted therein: that the data

---

**1.** Exhibits "NN" and "PP" are typical and contain the following clause under the heading "TRADE SECRETS":

It is expressly understood by the parties of this Agreement that the services and information provided by EDS, Inc. under this Agreement are considered a "trade secret", because the services and information are considered proprietary and disclosure of such services and information may cause competitive harm to EDS, Inc.

**554**

bases are trade secrets and EDS was concerned about preserving the confidentiality of these matters."

 We think the exhibits were admissible as verbal acts rather than assertions offered for the truth of the matters asserted. A verbal act is a statement which has an independent legal significance. Even though it would be inadmissible hearsay if offered to prove the truth of any definitive matter asserted therein, it is nevertheless admissible when offered to show merely that the statement was made. That is, it is admissible when offered for purposes of its independent legal significance. *See* 6 Wigmore, *Evidence* § 1770 (Chadbourn rev. 1976); J. Weinstein and M. Burger, *Evidence*, 801(c)[01] (1991). This view is supported by the statutory definition of a trade secret in Iowa Code section 550.2(4) (1989)[2] (since amended).

II. The clauses serve to establish the fact of reasonable efforts to preserve secrecy. There is other evidence. The source codes are encrypted. The contract with Iowa and all other contracts with EDS require confidential treatment. EDS responded to Brown's inquiry of the bureau immediately and asserted trade secrecy. EDS intervened in this litigation and asserted trade secrecy. This is sufficient statutory qualification of a trade secret.[3]

The trial court was correct in finding the data bases to be trade secrets.

III. This case is troubling because the rights of the vendor to its trade secret come into conflict with the rights of citizens to information purchased for the government at public expense. The conflict is heightened because voting, a fundamental right, underlies the dispute.

It was probably because of the sensitive nature of these conflicting tensions that the legislature placed an escape clause in the public records law. Although the parties have not placed it as an issue in this appeal, we note that a trial court is not helpless, in an appropriate case, to fashion a tentative remedy, one that would allow an exploration of the materials while protecting the trade secret. If the data bases are found to be exempt from disclosure under Iowa Code section 22.7 they must be kept confidential "unless otherwise ordered by a court." Under this provision, even if the data bases are exempt from disclosure under section 22.7, a court could order their disclosure notwithstanding the exemption.

Under the issues in this case the trial court was correct in refusing to order disclosure.

AFFIRMED.

**2.** We think the statute to be applied is the one in effect at the time of trial. *See* Iowa Code § 3.7 (1991). *See also Smith v. Korf, Diehl, Clayton & Cleverley,* 302 N.W.2d 137, 138–39 (Iowa 1981). At the time of trial § 550.2(4) defined a trade secret as

information, including but not limited to a formula, pattern, compilation, program, device, method, technique, or process that is *either* of the following:
  a. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable

by proper means by a person able to obtain economic value from its disclosure or use.
  b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
(Emphasis added.)

**3.** As previously noted, under the applicable statute the redistricting electronic data base information qualified as a trade secret upon a showing of *either* of the two matters mentioned in § 550.2(4). In holding it was qualified under § 550.2(4)(b), we do not suggest that it failed under § 550.2(4)(a).