# IN THE COURT OF APPEALS OF IOWA

No. 13-1852
Filed February 25, 2015

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**KENNETH LEROY ADAMS,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Gregg R. Rosenbladt, Judge.

A defendant appeals his judgment and sentence for child endangerment resulting in death. **JUDGMENT AND SENTENCE CONDITIONALLY AFFIRMED; RULING ON NEW TRIAL MOTION VACATED AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Heather R. Quick, Assistant Attorney General, Carlyle D. Dalen, County Attorney, and Steven Tynan and R. Blake Norman, Assistant County Attorneys, for appellee.

Heard by Vaitheswaran P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, P.J.**

Kenneth Adams appeals his judgment and sentence for child endangerment resulting in death. He contends: (1) the jury's finding of guilt is not supported by sufficient evidence, (2) the district court applied an incorrect standard in ruling on his motion for new trial, and (3) his trial attorney was ineffective in failing to challenge the medical examiner's testimony as an improper credibility assessment.

## I. Sufficiency of the Evidence

The jury was instructed the State would have to prove the following elements of child endangerment resulting in death:

> 1. On or about the 27th day of October, 2012, the defendant was the parent of or a person having custody or control of [O.A.].
> 2. [O.A.] was under the age of 14 years.
> 3. The defendant acted with knowledge that he was creating a substantial risk to the physical health or safety of [O.A.].
> 4. The defendant's act resulted in death to [O.A.].

Adams challenges the sufficiency of the evidence supporting the third element and, specifically, the knowledge requirement. The jury was separately instructed, "For the defendant to act with knowledge means he had a conscious awareness that by his actions he created a substantial risk to [O.A.'s] physical health or safety." "Substantial risk" was defined as "the very real possibility of danger to a child's physical health or safety."

A reasonable juror could have found the following facts. The child was nineteen months old at the time of his death. According to his mother, he had recently been treated for an ear infection, was experiencing some congestion,

and was a little fussy on the night before his death but was otherwise a big, healthy, and generally happy child.

On the day of the child's death, his mother removed him from his crib shortly before 10:00 A.M, proceeded with the family's usual weekend breakfast routine, and left to run errands with her daughter. Adams stayed home with the child and his older brother.

In a recorded interview, Adams told law enforcement officers the child got upset when his mother left, threw a tantrum, and "bashed [him] in the face." Adams was angered by the child's action. He told the child not to do that and instructed him to lie down. Adams threw a pillow on the couch, grabbed the child's pants and "flipped him up" onto the couch, placing him face down on the pillow. He held the child's arm and stroked his back until the child's breathing slowed down. At that point, Adams "turned [the child's] face slightly so that his face was sitting out" because he was concerned about sudden infant death syndrome. He played video games with his older son, cleaned the upstairs bathroom, and returned to play videogames, before noticing something was wrong with the child.

Adams called 911 on a recorded line. He informed the dispatcher his son was not breathing and his eyes were glassy.

Law enforcement officers and paramedics arrived at the scene and attempted life-saving procedures, to no avail. According to one officer, the child "was limp, and his face was blue."

Adams provided the officers with differing accounts of whether the child convulsed before dying. As for Adams's assertion that he cleaned the bathroom, an officer found the bathroom in disarray.

The State medical examiner testified the cause of the child's death was suffocation. He noticed bruises on the child, most prominently behind the right ear. In his view, the bruise could have been caused by a finger being pressed on the scalp. He also observed "11 different discrete areas of hemorrhage or bleeding into [] fatty tissue just underneath the scalp," as well as contusions on the child's legs. He testified the bruises would have been caused by "blunt force type trauma." He further explained the child's brain had "hypoxic neuronal changes," which were consistent with death by suffocation. He ruled the manner of death a homicide based on Adams's admission to holding the child's arm.[1] The medical examiner eliminated other reasonable causes of death, including choking on vomit, trauma from the child's "head butt" of his father, ear infection or cold, and sudden infant death syndrome.

This evidence amounts to substantial evidence in support of the knowledge element of the child endangerment charge. *See State v. Hennings*, 791 N.W.2d 828, 832-33 (Iowa 2010) (setting forth standard of review).

We acknowledge the existence of evidence that might have supported a contrary finding, including the 911 recording, capturing the voice of a distraught father praying for the life of his son, Adams's recorded musings outside the

---

[1] Adams has raised a challenge to this and other testimony of the medical examiner. However, for purposes of assessing the sufficiency of the evidence, we are obligated to examine all the evidence of record. *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003).

presence of officers cursing himself for failing to notice his son's condition, and a recorded reenactment with a doll, which showed Adams engaging in acts of comfort. However, it was the jury's function to sort through this evidence. *State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984). Having found sufficient evidence to support the knowledge element, we uphold the jury's finding of guilt.

### II. New Trial Motion

Adams filed a new trial motion asserting in part that the verdict was contrary to the evidence. The district court overruled the motion. On appeal, Adams contends the court used a sufficiency-of-the-evidence standard rather than the weight-of-the-evidence standard prescribed by *State v. Ellis*, 578 N.W.2d 655, 658-59 (Iowa 1998).[2] We agree with this contention. Accordingly, we conditionally affirm Adams's judgment and sentence, vacate the ruling on the new trial motion, and remand for reconsideration of the new trial motion applying a weight-of-the-evidence standard to the existing record. If the court denies the motion, our affirmance will stand. If the court grants the motion, the court should further set aside the judgment and sentence and order a new trial. We do not retain jurisdiction.

### III. Expert Testimony

Adams contends "the deputy medical examiner should not have been allowed to express his opinion about the manner of O.A.'s death as a 'homicide.'" He asserts the medical examiner's opinion was based on an impermissible assessment of Adams's credibility. Because the issue was not raised at trial,

---

[2] The State claims Adams did not preserve error on this claim. We are not persuaded by this contention.

Adams brings the challenge to our attention under an ineffective-assistance-of-counsel rubric.  We preserve this claim for postconviction relief proceedings to allow defense counsel an opportunity to respond.  *See State v. Shortridge*, 589 N.W.2d 76, 84 (Iowa Ct. App. 1998).

### IV. Disposition

We conditionally affirm Adams's judgment and sentence.  We preserve his ineffective-assistance-of-counsel claim for postconviction relief.  We vacate the district court's ruling on the new trial motion and remand for reconsideration of the motion under a weight-of-the-evidence standard.

**JUDGMENT AND SENTENCE CONDITIONALLY AFFIRMED; RULING ON NEW TRIAL MOTION VACATED AND REMANDED.**