# IN THE COURT OF APPEALS OF IOWA

No. 14-1977
Filed April 27, 2016

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**JACOBIE MONTEZ KENNEDY,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Todd A. Geer,

Judge.

Jacobie Kennedy appeals from his conviction of domestic abuse assault

causing bodily injury. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau,

Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik and Alexandra Link

(until withdrawal), Assistant Attorneys General, for appellee.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Jacobie Kennedy appeals from his conviction of domestic abuse assault causing bodily injury, contending the trial court erred in allowing hearsay testimony by medical personnel that he caused injury to the victim because the victim later recanted her statements given to medical personnel. He also asserts there is insufficient evidence he caused bodily injury, and the verdict was contrary to the weight of evidence. We determine the verdict should be affirmed.

"We review sufficiency-of-the-evidence claims for correction of errors at law." *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005). We consider all of the record evidence "in the light most favorable to the State . . . . including any inferences arising from the evidence." *State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996); *see also Williams*, 695 N.W.2d at 27-28. We do not resolve conflicts in the evidence, assess the credibility of witnesses, or weigh evidence. *Williams*, 695 N.W.2d at 28. A guilty verdict is binding if supported by substantial evidence. Iowa R. App. P. 6.904(3)(a).

Viewing the evidence in the light most favorable to the State, we agree with the district court there was substantial evidence establishing Kennedy committed domestic abuse assault causing bodily injury. On the morning of September 8, 2013, Jessica Johnson, who was more than seven months pregnant with Kennedy's child, went to the hospital emergency room reporting she had blacked out and was having contractions. While there, she tearfully informed her attending nurses—only after Kennedy had left the hospital with their other child—that Kennedy had choked her, causing her to black out and fall to the bathroom floor. Johnson showed the nurse, Elizabeth Pekarek, marks on her

neck and expressed concern for her other child's safety. Pekarek reported the situation to the nursing supervisor, Jennifer Kulper. Kulper spoke with Johnson, who repeated Kennedy had been intoxicated, become angry, and choked her until she blacked out. Kulper discussed her concerns for Johnson and the baby's safety if she were to be discharged back to the house. Johnson assured Kulper she intended to stay with her mother. Kulper observed the red marks on Johnson's neck.

Johnson also told an off-duty police officer at the hospital that Kennedy and she had argued about her smoking, there had been a shoving match, and he had begun to choke her. She did not want to press charges or give a statement, however. The officer noted red scratch marks on her neck. The officer spoke with Kennedy, who admitted he had been drinking and said things to Johnson that had upset her, but denied having had any physical contact with her. The off-duty officer then reported the situation to other officers, who arrested Kennedy.

Kennedy was charged with domestic abuse assault, strangulation causing bodily injury. Kennedy moved in limine to exclude any statements Johnson made to Pekarek that were not made for the purpose of medical diagnosis or treatment. After hearing arguments the morning of trial, the district court found that the statements were made in the context of explaining what may have caused the onset of pain that brought her to the hospital, which were admissible under Iowa Rule of Evidence 5.803(4), and that any delay in reporting was due to the presence of the defendant. The court specifically refused to rule on the then-existing record whether the testimony could also be admissible as an excited utterance.

At trial, Johnson testified that she and Kennedy had argued. She also testified she told the nurse she had blacked out because Kennedy had strangled her and she had marks on her neck. However, she then testified she said Kennedy had choked her to get him into trouble and that she had scratched her neck when she tore her own necklace off because "he was saying some hurtful things to me." Johnson testified she did not remember talking to any police, but acknowledged an officer asked to look at her neck. Johnson testified that when she found out her two-year-old child was safe with Johnson's mother, "I felt that I didn't need to lie to protect her anymore." Johnson testified she and Kennedy were "going to try to work things out when this is over." On redirect, Johnson acknowledged telling two nurses she had been choked and blacked out.

Nurse Pekarek testified Johnson first reported she believed she was having labor contractions and that she had blacked out and fallen down. Pekarek stated she stepped away to do some paper work and when she returned, the male who had been with Johnson was gone, and Johnson was crying and upset. At that time, Johnson reported, "He's crazy. He's crazy. That's why we're here. He choked me." Pekarek testified she observed three red marks on Johnson's neck underneath her jawline. Nurse Kulper testified that when she was talking to Johnson, Johnson was rubbing her neck and she did have red marks on her neck.

Kennedy argues the nurses could not state what caused the marks on Johnson's neck and there were no photographs taken of any injuries. He asserts there is thus insufficient evidence to support the conviction. The fact-finder decides which evidence to accept or reject. *Williams*, 695 N.W.2d at 28.

Evidence is not insubstantial merely because the evidence could support contrary inferences or because the verdict rests on weighing the credibility of conflicting witness testimony. *Id.* (holding that there was substantial evidence to support the jury verdict finding defendant guilty of domestic abuse assault where "the fighting issue throughout the trial was whether [the defendant] choked [the complainant] or she falsely accused him of choking her").

In the alternative, Kennedy contends the evidence was contrary to the weight of the evidence, and the district court abused its discretion in denying him a new trial. In considering the credibility of the evidence and inferences to be drawn from the evidence, we conclude the weight of the evidence is not against the verdict. Clearly, the jury concluded Johnson's statements at the hospital were more credible and consistent with the evidence than her subsequent recantation and Johnson's testimony. We find no abuse of the court's broad discretion here. *See State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003) ("The district court has broad discretion in ruling on a motion for new trial.").

Kennedy lastly asserts the district court erred in ruling the medical-diagnosis exception was applicable because the declarant's motive in making the statements must be consistent with the purposes of promoting treatment. *See State v. Tracy*, 482 N.W.2d 675, 681 (Iowa 1992); *cf. State v. Smith*, ___ N.W.2d ___, ___, 2016 WL 851991, at *7 (Iowa 2016) (rejecting a categorical rule that statements that identify perpetrators made to medical personnel by victims of domestic abuse are automatically admissible under rule 5.803(4)). He argues that because Johnson testified her motive in making the statements was to get Kennedy in trouble, the court erred in admitting the statements. This argument

was not made to the district court, however, and thus is not subject to our review. *See State v. Shortridge*, 589 N.W.2d 76, 84 (Iowa 1998).

**AFFIRMED.**