# IN THE COURT OF APPEALS OF IOWA

No. 16-1494
Filed November 21, 2018

**MONTEZ D. SHORTRIDGE,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

Montez Shortridge appeals from the district court's denial of his application for postconviction relief. **AFFIRMED.**

Erin M. Carr of Carr & Wright, PLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

In 1996, a jury found Montez Shortridge guilty of first-degree murder in connection with the death of a Des Moines man. This court affirmed his judgment and sentence, as well as the denial of his first application for postconviction relief. *See Shortridge v. State*, No. 01-0199, 2004 WL 574617, at *4–8 (Iowa Ct. App. Mar. 24, 2004); *State v. Shortridge*, 589 N.W.2d 76, 79–80 (Iowa Ct. App. 1998). Shortridge filed a second postconviction-relief application, which was stayed pending resolution of the first application and subsequently languished for more than a decade. The district court eventually denied the application following an evidentiary hearing.

Shortridge now appeals the district court's resolution of the second postconviction-relief application. He contends (1) the State suppressed exculpatory evidence and (2) he is "entitled to an ex parte hearing for the appointment of an expert."

## I. *Suppression of Exculpatory Evidence*

In his second postconviction-relief application, Shortridge asserted the State failed to disclose information relating to State witness Jheri Hatten, who lived in Iowa for a short period before moving to California.[1] Specifically, he alleged, (1)

---

[1] This court summarized her trial testimony as follows. Hatten "lived with Shortridge and worked for him as a prostitute at the time of the murder." *Shortridge*, 589 N.W.2d at 79. Shortridge "bailed [Hatten] out of jail." *Id.*

> When he bailed her out she noticed he had a cellular phone and a lot of money. After they arrived at their apartment, she discovered a bag of dark, dirty clothing which she described as smelling dirty or like spoiled meat. While watching a day-time television news broadcast with Shortridge, [the] picture [of the man who was killed] appeared. Shortridge told Hatten, "he didn't look like that when I was through with him."

*Id.*

"Hatten was on probation out of Woodbury County for a fourth-degree theft conviction entered on June 28, 1994,"[2] (2) a warrant was issued for her arrest, (3) the State made arrangements to fly Hatten "back from California to be interviewed by [a] homicide investigator," (4) the State "obtained a transfer of a probation violation involving Hatten from Woodbury County to Polk County," (5) "on the same day she returned" for the interview, the State "held a [probation] revocation hearing" in Polk County, and (6) the State "made a "favorable recommendation" in the probation revocation hearing, which was not disclosed to the defense.

The postconviction court concluded the favorable recommendation "was not suppressed because the information could have been discovered by defense counsel." The court provided the following reasoning:

> Defense attorneys knew that Ms. Hatten was on probation at the time of the murder, and in fact, their alibi defense was partially based on the timing of applicant bonding her out of jail. They likewise knew that she had left Iowa for California in September of 1994 . . . . They knew that she returned to Iowa in February of 1995 to provide a statement to prosecutors. The probation violation hearing was conducted on the record and the court filed an order accordingly. Any review of the file would have revealed that a hearing was held, which could have led to further investigation. The State made Ms. Hatten available for deposition on three occasions after the murder charge was filed. While defense counsel did not know the circumstances of the probation violation hearing, they at least had the grounds and opportunity to inquire into any resolution of her pending probation matter.

The court also concluded "the information was not material."

On appeal, Shortridge acknowledges "defense counsel would have been aware of Ms. Hatten's being on probation." He also acknowledges his attorneys

---

[2] At the probation revocation hearing, Hatten stated the offense for which she was on probation was "[f]elony forgery and prostitution."

arguably "could have uncovered the arguments made at Ms. Hatten's probation violation hearing." But he asserts his attorneys "were not privy to . . . the circumstances bringing her back to Iowa to take care of that." In his view, those circumstances could have been used to impeach Hatten at trial.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish a *Brady* violation, Shortridge must prove by a preponderance of the evidence "(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt." *Moon v. State*, 911 N.W.2d 137, 145 (Iowa 2018) (quoting *DeSimone v. State*, 803 N.W.2d 97, 103 (Iowa 2011)). We begin and end with the first prong: whether the evidence was suppressed.

"Evidence is suppressed when information is discovered after trial which had been known to the prosecution but unknown to the defense." *Harrington v. State*, 659 N.W.2d 509, 522 (Iowa 2003) (quoting *Cornell v. State*, 430 N.W.2d 384, 385 (Iowa 1988)). "'[I]f the defendant either knew or should have known of the essential facts permitting him to take advantage of the evidence,' the evidence is not considered 'suppressed.'" *DeSimone*, 803 N.W.2d at 103 (quoting *Harrington*, 659 N.W.2d at 522).

Shortridge's attorneys conceded they had access to police reports before trial. One of the reports prepared by the officer who interviewed Hatten on her return from California stated:

> On 24 Feb. 95 at 0930 hours this officer met with Jheri Hatten at the DM Airport as she had returned back from CA to meet with us reference this case. This officer escorted Ms. Hatten down to my office at the [Des Moines Police Department] where in room 317E in the Crimes Against Persons Section she was interviewed reference this case by myself.

The report would have apprised the attorneys of Hatten's return to Iowa.

Shortridge points out that the report omitted reference to the State's payment of Hatten's travel expenses. In his view, his attorneys were entitled to know of this benefit she received from the State, a benefit that could have been used to impeach her at trial. But Shortridge had ample opportunity to glean this information before trial. And, in any event, one of Shortridge's attorneys testified by deposition that he probably would not have questioned Hatten about a promise to pay those expenses. In his words, "I mean, if they want to fly her in to interview her, they're not going to put that on her dime, anyway."

Shortridge's attorneys also had access to the transcription and videotape of the police interview of Hatten. At the conclusion of the interview, the officer asked Hatten whether her statement was "given freely and voluntarily and without any threats or promises" and whether it was "true to the best of [her] knowledge." Hatten responded, "Yes." Again, Shortridge's attorneys could have questioned Hatten about the veracity of this statement in one of the four pretrial depositions they conducted. In any event, those depositions of Hatten gave the defense everything they needed concerning the State's favorable recommendation at Hatten's probation revocation hearing.

In her first deposition, Hatten acknowledged she was arrested for forgery in Sioux City, Iowa, pled guilty to the charge, and received "alternate sentencing."

At this juncture, then, defense counsel knew the conviction emanated from Woodbury County.

In the second deposition, Hatten discussed convictions for prostitution and forgery and stated an arrest warrant was out for not reporting to her probation officer. Although the warrant differed from the one pending when the probation revocation hearing was held, the underlying convictions were the same. Critically, Shortridge's attorney asked Hatten, "Were those both, prostitution and forgery, from Polk County?" Hatten responded, "Yes. No. Actually, they were from Sioux City." She also named her probation officer. The same officer spoke to the Polk County district court at Hatten's probation revocation hearing and recommended revocation of Hatten's probation.

Towards the end of the second deposition, Shortridge's attorney again asked Hatten to name the county from which her probation for forgery issued. She responded, "Sioux City." He repeated, "And that was from, you said, Sioux City?" Hatten responded, "Correct." Counsel followed up with, "Was that probation transferred to Polk County?" Hatten responded, "Yes, it was."

In sum, defense counsel confirmed that both convictions underlying the probation revocation proceeding arose in Woodbury County, learned the identity of Hatten's probation officer from whom he could have obtained additional information about her status, and determined that the probation proceeding was transferred to Polk County. The second deposition was taken more than a year before trial.[3]

---

[3] Also admitted as an exhibit in the postconviction-relief hearing is a "victim packet" with handwritten comments stating a judge in Woodbury County had "no problem with" having

Two additional depositions followed. Counsel did not pursue the probation revocation issue in those depositions.

We conclude Shortridge knew before trial "the essential facts permitting him to take advantage of the evidence." *DeSimone*, 803 N.W.2d at 103 (quoting *Harrington*, 659 N.W.2d at 522). We further conclude the evidence was not suppressed. We affirm the district court's denial of postconviction relief on this claim.

## II. Ex-Parte Hearing-Expert

During the postconviction proceedings, Shortridge filed a motion for appointment of substitute counsel and stay of proceedings. When the court asked him about the motion, Shortridge mentioned several Iowa Supreme Court opinions, including *State v. Dahl*, 874 N.W.2d 348, 353 (Iowa 2016). He stated:

> I mean, my concern is this. In *Dahl*, the Iowa Supreme Court just ruled on January 22nd of this year that any time you're discussing strategic matters or you're asking for funds or any type of assistance from the Court dealing with your defense, that that matter needs to be dealt with ex parte.

*See Dahl*, 874 N.W.2d at 353 (exercising "supervisory powers . . . to articulate a protocol to balance the statutory right of an indigent defendant to the appointment of a private investigator under section 815.7 against his or her burden to present sufficient information to the trial court to support the granting of an application for appointment of a private investigator at state expense," and holding, "When a trial court deems an indigent defendant's application for appointment of a private investigator may have some merit but does not contain adequate information for

---

a judge in Polk County handle the probation revocation hearing. It is unclear whether Shortridge's attorneys had this document before trial.

the court to determine whether it should grant the application, the court should hold an ex parte hearing before ruling on the merits of the application").

The postconviction court addressed Shortridge's reference to *Dahl* as follows:

> The issue in *Dahl* was whether a criminal defendant could make an ex parte request to the court to appoint a private investigator at state expense. The court held that the request could be considered ex parte to avoid revealing trial strategy. However, *Dahl* is not analogous. This is not a criminal case, but a post-conviction case reviewing aspects of the criminal case that is already complete. The burden of proof and elements to be proved are different. *See State v. Utter*, 803 N.W.2d 647, 652 (Iowa 2011). There was no concern with petitioner revealing trial strategy. Accordingly, there was no right to an ex parte hearing.

We discern no error in this reasoning. *Dahl* was premised on Iowa Code section 815.7 (2013), which authorizes the payment of expenses for indigent defense in criminal matters. *Id.* at 351. In construing the provision, the court cited the State's obligation under the Sixth Amendment to the United States Constitution "to pay for reasonably necessary defense services for which indigent defendants demonstrate a need in order to ensure such defendants receive effective assistance of counsel." *Id.* at 351–52. The Sixth Amendment right to counsel does not apply in postconviction cases. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings"); *but cf. Goode v. State*, ___ N.W.2d ___, ___, 2018 WL 6004877, at *4 (Iowa 2018) (declining to reject a claim of ineffective assistance of postconviction counsel solely on the basis that it was framed as a constitutional right, noting, "The source of the claim . . . was not an issue on appeal, and the State was not disadvantaged in any way by the manner in which Goode elected to

frame his issue").  Accordingly, we conclude the postconviction court did not err in denying Shortridge's motion.

We affirm the district court's denial of Shortridge's second postconviction-relief application and motion.

**AFFIRMED.**