STATE of Iowa, Appellee,

v.

Steven Wayne TAYLOR, Appellant.

No. 95–716.

Supreme Court of Iowa.

Dec. 18, 1996.

Linda Del Gallo, State Appellate Defender, Andi S. Lipman, Assistant State Appellate Defender, and Carrie Wolf, Student Intern, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, and J. Patrick White, County Attorney, for appellee.

Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

Defendant Steven Wayne Taylor appeals the judgment entered upon his conviction for trafficking in stolen weapons, in violation of 1994 Iowa Acts chapter 1172, section 55. He seeks reversal on the ground the law was enacted in violation of article III, section 29 of the Iowa Constitution—the "single subject and title" section. He also challenges convictions on companion charges of theft in the fourth degree and possession of a firearm by a felon. See Iowa Code §§ 714.1(1), 714.2(4), and 724.26 (1993). He claims the record contains insufficient evidence to sustain those judgments. Because we find merit in Taylor's challenge to the constitutionality of the trafficking weapons offense, we reverse on that charge. But we affirm the remainder of the district court's judgment.

## I. Background Facts and Proceedings.

Taylor was camping at Hills Access Park near Coralville, Iowa, awaiting the availability of an apartment he had recently rented. While there he encountered David Newman and John Hogue, two friends who were target shooting with a .12 gauge semiautomatic shotgun inherited by Hogue from his grandfather. Newman invited Taylor to move in with him for a few days. The trio loaded Taylor's belongings into the back of Hogue's pickup truck, using the cased shotgun to wedge in a tarp covering the gear.

When Taylor and the others arrived at Newman's, several young men were hanging about, drinking beer and playing video games. Taylor's gear was unloaded. A short time later, as Hogue was about to

leave, he noticed that his shotgun was missing. No one present claimed knowledge of its whereabouts. Hogue later filed a missing property report with the Coralville police department.

An investigation into the theft led to interviews with those present at Newman's on August 13. One suspect, Jason Semler, denied responsibility but said he suspected Taylor. He divulged that Newman's brother, Dan, said he saw the shotgun in Newman's closet. He also revealed that David Newman had called him, requesting that he deny any knowledge of the theft if questioned by police. The detective then interviewed Newman, warning him that if he "facilitated" the transfer of a shotgun, he would be charged with trafficking in stolen weapons. Newman then implicated Taylor. He admitted that he saw the gun in a bedroom closet and, when he had asked Taylor about it, Taylor replied that he "grabbed it and it's his now."

Meanwhile, the gun surfaced at Hills Access Park on August 29. Joseph "Scrap Iron" Larkin reportedly used it to shoot at a carload of young people gathered there. Sprayed buckshot injured a passenger and damaged the vehicle. Taylor was then charged with trafficking in stolen weapons, fourth-degree theft, and possession of a weapon by a felon.

Taylor moved to dismiss the trafficking in weapons charge, claiming it was buried in a newly enacted juvenile justice bill, thereby violating the constitutional single subject and title requirement. The court denied the motion. Following rulings on other preliminary motions not at issue here, Taylor waived a jury and proceeded to trial. Based on the evidence sketched above, the district court found him guilty as charged. This appeal by Taylor followed.

## II. *Scope of Review.*

■ Our review of Taylor's challenge to the constitutionality of the trafficking in weapons charge is de novo. *State v. Finnel,* 515 N.W.2d 41, 43 (Iowa 1994). Challenges to the sufficiency of evidence to corroborate an accomplice's testimony are reviewed for errors at law. *See State v. Brown,* 397 N.W.2d 689, 694–95 (Iowa 1986); *State v. Berney,* 378 N.W.2d 915, 917 (Iowa 1985).

### III. *"Single Subject and Title" Requirement.*

■ Article III, section 29 of the Iowa Constitution provides:

> Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title.

We outlined the rationale and mechanics of this constitutional provision in *State v. Mabry,* 460 N.W.2d 472 (Iowa 1990). There we said the provision serves a threefold purpose: (1) to prevent "logrolling," the combining of unrelated bills so that unfavorable legislation "rides in" with more popular legislation; (2) to facilitate the legislative process by reducing surprise or fraud when legislators are uninformed; and (3) to keep citizens informed of legislation being considered. *Id.* at 473; *see also State v. Iowa Dist. Ct.,* 410 N.W.2d 684, 686 (Iowa 1987). Article III, section 29 has four requirements:

> First, the act may have only one subject together with matters germane to it. Second, the title of the act must contain the subject matter of the act. Third, any subject not mentioned in the title is invalid. Last, an invalid subject in the act does not invalidate the remaining portions that are expressed in the title.

*Mabry,* 460 N.W.2d at 474 (citations omitted).

> This does not mean that any two subjects in a multifaceted piece of legislation must, in isolation, demonstrably relate to each other for the bill to pass constitutional muster. It is only necessary to show that all subjects relate to a single purpose.

*Miller v. Bair,* 444 N.W.2d 487, 489 (Iowa 1989). We have uniformly held that the single subject and title rule should be liberally construed so that one act "may embrace all matters reasonably connected with the subject expressed in the title and not utterly

incongruous thereto." *Long v. Board of Supervisors,* 258 Iowa 1278, 1283, 142 N.W.2d 378, 381 (1966).

 A. *Timeliness of challenge.* Once a bill is codified, any constitutional defect relating to title or subject matter is cured. *Mabry,* 460 N.W.2d at 475. There is a window of opportunity, however, measured from the date a bill is passed until it is codified, during which a constitutional challenge may lie. *Id.* A successful challenge invalidates the defective portion of the legislation, a result that inures to the benefit of others adversely affected. *Tabor v. State,* 519 N.W.2d 378, 380 (Iowa 1994).

The State concedes that Taylor has timely and properly preserved his constitutional challenge. He raised the single subject and title defect by way of a motion to adjudicate law points filed *after* the law's effective date, July 1, 1994, but *before* its codification in 1995 as Iowa Code section 724.16A (1995).

 B. *Merits.* Taylor's conviction for trafficking in weapons was based on Senate File 2319, a bill entitled "Juvenile Justice." *See* 1994 Iowa Acts ch. 1172. The bill contains seventy-four sections embracing a variety of initiatives, all but six of which expressly relate to juveniles.[1] The legislation calls for training gang-affected youth in racial and cultural awareness, *id.* § 1; prohibits supplying or distributing alcohol, tobacco, and drugs to juveniles, *id.* §§ 2–10, 37, 38, 60, 61; sets up procedures for enforcing juvenile offenses, *id.* §§ 11–26, 32–35, 39, 40, 62; establishes community programs to support at-risk juveniles through intervention, prevention, and education, *id.* §§ 27–33; combats child abuse and sexually predatory acts, *id.* §§ 41–52, 59; creates weapon-free school zones, prohibits selling guns and ammunition to minors, and provides punishment for juveniles using firearms, *id.* §§ 53, 56, 64; appropriates money to fund juvenile programs and services, *id.* §§ 65–72; and calls for a study of juvenile delinquency, including patterns of recidivism and rehabilitation, *id.* § 73.

By contrast, the section with which Taylor was charged criminalizes the act of trafficking in stolen weapons without reference to juvenile justice concerns. The section provides:

A person who knowingly transfers or acquires possession, or who facilitates the transfer, of a stolen firearm commits a class "D" felony for a first offense and a class "C" felony for second and subsequent offenses or if the weapon is used in the commission of a public offense. However, this section shall not apply to a person purchasing stolen firearms through a buy-back program sponsored by a law enforcement agency if the firearms are returned to their rightful owners or destroyed.

1994 Iowa Acts ch. 1172, § 55. Nevertheless the district court found, and the State urges on appeal, that *any* weapons law could have an impact on juveniles and, hence, section 55 is "in some reasonable sense auxiliary to" juvenile justice. We find the argument unpersuasive. Such reasoning would bring within its orbit virtually *any* new crime whether germane to the subject of juvenile justice or not. Indeed the single-subject infirmity of section 55 is illustrated by comparing it to section 56 of the same act. That section states in pertinent part:

[A] person who sells, loans, gives, or makes available a rifle or shotgun or ammunition for a rifle or shotgun *to a minor* commits a serious misdemeanor for a first offense and a class "D" felony for second and subsequent offenses.

*Id.* § 56(1) (emphasis added). Other sections in the act make wide use of descriptive terms such as "child," "youth," and "juveniles." Section 55 contains no reference to juvenile crime or juvenile justice so as to connect it to the general subject of the legislation. In other words, it is not germane to the rest of the act's multifaceted effort to promote juvenile justice. *See Miller,* 444 N.W.2d at 490.

 Nor is the title of the act sufficient under article III, section 29 to adequately identify section 55 as a topic governed by its

---

1. The six, including § 55 challenged by Taylor, govern driver's license revocation without regard to age, § 36; adult weapons provisions, §§ 54, 55, 57 and 58; and wiretapping, § 63. Only § 55 is being challenged here.

provisions. "A title is sufficient, even though it is broad, if it gives fair notice of a provision in the body of an act." *Western Int'l v. Kirkpatrick*, 396 N.W.2d 359, 365 (Iowa 1986). But as an act's provisions become "more disjointed and less obviously related to each other, the legislature's obligation to provide greater specificity in the act's title necessarily increases." *Iowa Dist. Ct.*, 410 N.W.2d at 688. The ambitious legislation under consideration tackled numerous aspects of juvenile justice in seventy-four separate sections. Its full title described the legislation as follows:

> AN ACT relating to juvenile justice by establishing or enhancing penalties for delinquent acts which may be committed by juveniles, establishing or enhancing penalties for public offenses relating to juvenile justice, authorizing searches of student lockers in a school without advance notice under certain circumstances, delaying the repeal of the interception of communications law, providing for the commitment of persons determined to be sexually violent predators, and making related appropriations and providing effective dates.

1994 Iowa Acts ch. 1172.

Taylor argues that, on its face, the title suggests legislation that applies only to offenses involving juvenile *delinquency*. We cannot agree. Section 53, which enhances penalties for firearm offenses committed in weapon-free zones near schools and parks, reveals adult offenses that are fairly embraced by the term "public offenses relating to juvenile justice." The title is deficient, however, in its failure to indicate that the legislation addresses a weapons law which bears no specific relationship to juveniles. Thus to the extent the act embraces, in section 55, a subject not expressed in its title, it is void and unenforceable. *Tabor*, 519 N.W.2d at 379–80. Taylor's conviction based on section 55, now codified at Iowa Code section 724.16A, must be reversed.

## IV. *Sufficiency of Evidence on Theft and Possession of Weapons.*

Taylor also challenges his convictions on companion charges—fourth-degree theft

and possession of a firearm by a felon.[2] He claims the State produced insufficient evidence to corroborate the incriminating testimony of David Newman, an alleged accomplice. Given the inadequacy of other evidence tying him to theft of the shotgun, Taylor argues, the court erred in denying his motion for judgment of acquittal. We disagree.

■ Our analysis begins with the threshold question of Newman's status as an accomplice. The State does not seriously contest Taylor's claim that, on largely the same circumstantial evidence, Newman could have been charged and convicted of the same offenses for which Taylor stood trial. Newman had enjoyed shooting the shotgun earlier in the day; he resisted giving Hogue the names and phone numbers of guests who were at his house on the night of the theft; he called a potential suspect and told him not to tell the police anything about the gun if questioned; and only when threatened with the prospect of being charged with theft did he implicate Taylor. Clearly Newman fits the definition of accomplice. *See Berney*, 378 N.W.2d at 917.

The question is whether Newman's testimony is sufficiently corroborated, as required by Iowa Rule of Criminal Procedure 20(3). The rule provides:

> A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Iowa R.Crim. P. 20(3). This corroboration rule serves two purposes: (1) to independently connect the defendant to the crime; and (2) to counterbalance the dubious credibility of a witness whose testimony may be motivated by self-interest in casting the

---

**2.** The record reveals that Taylor was previously convicted of second-degree burglary, a class "C" felony. *See* Iowa Code § 713.5.

blame elsewhere. *State v. Larsen,* 512 N.W.2d 803, 806 (Iowa App.1993).

■ Corroborative evidence need not be strong, nor must it confirm every detail of the accomplice's testimony. *State v. Aldape,* 307 N.W.2d 32, 41 (Iowa 1981). But it must furnish some material fact tending to connect the defendant to the crime, lending support to the accomplice's credibility. *State v. Powell,* 400 N.W.2d 562, 564 (Iowa 1987).

■ The State offered several pieces of evidence to corroborate Newman's testimony. First it offered Hogue's testimony placing Taylor contemporaneously at the scene of the theft. That same circumstance was also confirmed by Taylor's own testimony. *See State v. Martin,* 274 N.W.2d 348, 350 (Iowa 1979) (defendant may supply necessary corroboration). Taylor's own assertion of an implausible story—that a known thief at Hills Access Park might have stolen the gun, despite proof the gun was with Taylor, Hogue and Newman as they drove *away* from the park—also implicates him in the theft. *See State v. Nance,* 533 N.W.2d 557, 563 (Iowa 1995) (use of false story may be treated as implied admission). Jason Semler testified that when Newman spoke to him about the stolen gun, he understood that Taylor was involved. Finally, the gun eventually turned up at Hills Access Park in the hands of a "regular" there. The record shows that Taylor used the access park as his residence, both before *and after* his temporary sojourn at Newman's.

Although this independent evidence against Taylor is not strong, it furnishes a sufficient basis for the district court's finding that Taylor took possession of Hogue's shotgun on or about August 13, 1994, with the intent to deprive Hogue of it. There is no dispute that the gun's value was greater than $100 but less than $500. *See* Iowa Code § 714.2(4). Taylor's possession of the weapon also violated Iowa Code section 724.26 because he is a felon. Accordingly, we affirm the district court's judgment finding Taylor guilty of theft in the fourth degree and possession of a weapon as a felon.

**REVERSED IN PART AND AFFIRMED IN PART.**