# IN THE COURT OF APPEALS OF IOWA

No. 16-1425
Filed October 24, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**ISAIAH ZACHARIAS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Joel A.
Dalrymple, Judge.

A defendant appeals his conviction of robbery in the second degree.
**AFFIRMED.**

Nicholas J. Einwalter of Einwalter Law, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney
General, for appellee.

Considered by Doyle, P.J., Mullins, J., and Mahan, S.J.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**MAHAN, Senior Judge.**

Several people conspired to order Chinese food for delivery to an abandoned house and then rob the delivery driver at gunpoint using a BB gun. Police collected evidence implicating several juveniles and Isaiah Zacharias. Interviews of those suspects provided consistent stories that Zacharias was the mastermind behind the plan. The State charged Zacharias and the conspirators with robbery in the second degree.[1] Zacharias's case proceeded to trial, and the jury found him guilty as charged. The district court denied his motions for judgment of acquittal and in arrest of judgment.

Zacharias appeals, claiming (I) there was insufficient evidence to corroborate the accomplice testimony and prove his participation in the crime and (II) the district court abused its discretion in sentencing him. Upon our review, we affirm.

## I.    *Corroboration of Accomplice Testimony*

Zacharias contends the State produced insufficient evidence to corroborate the incriminating testimony of his alleged accomplices. According to Zacharias, given the inadequacy of other evidence tying him to the robbery, the district court erred in denying his motion for judgment of acquittal. The question is whether the accomplice testimony is sufficiently corroborated as required by Iowa Rule of Criminal Procedure 2.21(3), which provides:

> A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall

---

[1] The trial information also charged Zacharias with burglary in the third degree, stemming from his involvement in a separate crime that occurred the day after the robbery. The court granted Zacharias's motion to sever the charges, and he subsequently entered a guilty plea on that charge. He does not appeal from that conviction.

> tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

This rule serves two purposes: "(1) to independently connect the defendant to the crime; and (2) to counterbalance the dubious credibility of a witness whose testimony may be motivated by self-interest in casting the blame elsewhere." *State v. Taylor*, 557 N.W.2d 523, 527–28 (Iowa 1996).

"The existence of corroborating evidence is a legal question for the court." *State v. Bugely*, 562 N.W.2d 173, 176 (Iowa 1997). Once the legal adequacy of the corroborating evidence is established, the question of the sufficiency of the evidence is for the jury to determine. *Id.* Challenges to the sufficiency of evidence to corroborate an accomplice's testimony are reviewed for errors at law. *Taylor*, 557 N.W.2d at 525.

"Any corroborative evidence which tends to connect the accused with the commission of the crime and thereby supports the credibility of the accomplice is sufficient." *State v. Vesey*, 241 N.W.2d 888, 890 (Iowa 1976). "Corroborative evidence need not be strong, nor must it confirm every detail of the accomplice's testimony. But it must furnish some material fact tending to connect the defendant to the crime, lending support to the accomplice's credibility." *Taylor*, 557 N.W.2d at 527. "A small amount of corroborative evidence is all that is required." *State v. Wagner*, No. 01-1232, 2002 WL 1758180, at *5 (Iowa Ct. App. July 31, 2002).

The record in this case includes the following facts. On January 8, 2016, sometime around 7:00 p.m., East China in Waterloo received an order for $105 of Chinese food. The caller instructed the delivery driver to bring the food to 1935 Mulberry Street with change for $200. Upon his arrival to the house, the driver

encountered a female who asked him to come inside to receive payment. When the driver refused, a male exited and asked him to go to the back door for payment. As the driver followed the male to the back of the house, he saw another male, with his face covered, holding a gun. Three men then rushed toward the driver, took the $95 from his pocket, and shot him several times in the back. The gun turned out to be a BB gun, and the driver was able to retreat to his vehicle as his assailants ran away. A neighbor's security camera depicted five individuals running away from the house down an alley. Footprints in the snow trailed to a cell phone belonging to one of the males, later identified as K.S., and a bag of Chinese food.

Brenda Kinkaide owns 1935 Mulberry Street. In January 2016, the house was uninhabited; its last occupant, Kinkaide's daughter, had recently moved out. Kinkaide recalled an occasion in December 2015 when she stopped by the house while her daughter was at work and found the door open and two uninvited women there. Kinkaide recognized one of the women as Isaiah Zacharias's girlfriend. When Kinkaide kicked them out of the house, Zacharias came to pick them up.

Police located suspects and conducted interviews of K.S., T.G., R.B., and N.H.A., who told consistent stories that Zacharias came up with the plan to rob the delivery driver because "he just got laid off from his job" and "he was tired of being broke." Police also learned Zacharias and K.S., T.G., R.B., and N.H.A. chose to have the food delivered to 1935 Mulberry Street because it "was abandoned." K.S. brought latex gloves for everyone to wear, and he called in the food order using an app so the phone number was not traceable. N.H.A., the only female of the group, was supposed to answer the door "[s]o it doesn't look suspicious that a bunch of

males are standing there waiting for him." Zacharias told T.G. "to be the lookout," while R.B., K.S., and Zacharias would "attack him." R.B. brought the BB gun, and Zacharias grabbed the money from the driver during the attack. After the robbery, Zacharias divided the $95, and the group ran to K.S.'s house where they stayed until Zacharias decided they all needed to split up.

Police interviewed Zacharias. He said he did not know K.S., T.G., R.B., or N.H.A., and he stated he had been at his father's house "all day." Zacharias further stated he had not called anyone that day. Police spoke to Zacharias's father, who said Zacharias was not home until between 9:00 and 10:00 p.m. His father also said he received a call from Zacharias from an unknown number. Police confirmed Zacharias called his father from N.H.A.'s phone that evening. After changing his story several times, Zacharias eventually admitted to being present at the time of the robbery.[2]

Here, Zacharias's statements to police were corroborative of the accomplice testimony. *Cf. Wagner*, 2002 WL 1758180, at *5 (holding the defendant's "false statement to Officer Perley, that he and D.B. were in the parking lot because they were looking for D.B.'s lost dog, is corroborative of D.B.'s testimony because it is itself an indication of guilt"); *see also State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993) (noting that a false story by a defendant to explain or deny a material fact against the defendant is by itself an indication of guilt). The district court found as such:

> In this particular case, I'm not going to outline all of them, but the defendant's out-of-court statements are such that they're corroborative in nature; that the case law suggests that a false

---

[2] At trial, the jury watched a video of Zacharias's interview with police.

statement to officers, and in this case we have at least two false statements if not three, but admittedly on his part two false statements before he goes to his third and final statement, and that a defendant's false statement to an officer is—can be considered corroborative . . . .

The court also noted "there's other things I believe here that are corroborative in nature." Indeed, N.H.A. testified Zacharias called his father from her phone on the evening of the robbery; Zacharias's father stated he received a call from Zacharias from an unknown number that night. And K.S.'s phone records showed a text message from "Isaiah Zacharias boss man" was deleted from his phone at 7:33 p.m. that evening.

The corroboration rule "is met if it can fairly be said the accomplice is corroborated in some material fact tending to connect the defendant with the commission of the crime." *Vesey*, 241 N.W.2d at 890. Based on the evidence set forth above, we conclude there was evidence in addition to the accomplice testimony tending to connect Zacharias with the commission of the robbery. Accordingly, the district court did not err in finding sufficient corroborative evidence to submit the case to the jury.

## II. *Sentencing Decision*

Zacharias contends the district court abused its discretion "by sentencing him to a term of incarceration that included a mandatory seventy-percent minimum prison sentence as opposed to a mandatory minimum sentence of fifty percent." Zacharias acknowledges the court imposed a sentence "within the legal options before it," but he claims it was "clearly unreasonable given the individual factors presented in this case." Zacharias points to mitigating factors, such as the fact that he was nineteen years old at the time of the crime ("While technically an adult,

it was clear that [he] still had a lot of maturing to do.") and the fact that he did not physically assault the victim ("[H]e merely held [the victim] and took the money [but] was not involved in attacking [the victim] with the BB gun."). We review sentences within the statutory limits for an abuse of discretion. *State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017).

The district court considered these, and other, mitigating factors in imposing Zacharias's sentence. The court also considered aggravating circumstances, such as Zacharias's criminal history, which included "an adjudication for a robbery in the first degree"; the "very serious, heinous nature of this offense," including "the fact that the victim in this particular case was, despite being compliant, was shot and shot repeatedly"; and the risk that Zacharias's "continued contact with society poses a danger." The court also expressly noted its consideration of the sentencing factors contained in Iowa Code section 901.11(3) (2016).

We conclude the court appropriately exercised its discretion in finding the aggravating circumstances outweighed the mitigating circumstances and concluding a harsher sentence was therefore appropriate. We find no abuse of discretion and affirm Zacharias's sentence.

**AFFIRMED.**