# In the Iowa Supreme Court

No. 24–0641

Submitted April 16, 2025—Filed May 30, 2025

**LS Power Midcontinent, LLC,** and **Southwest Transmission, LLC,**

Appellees,

vs.

**State of Iowa, Iowa Utilities Board,** and **Geri D. Huser,**

Appellants,

**MidAmerican Energy Company** and **ITC Midwest, LLC,**

Intervenor-Appellants.

Appeal from the Iowa District Court for Polk County, Coleman McAllister, judge.

The State and two incumbent utilities appeal the scope of a permanent injunction limiting their participation in certain electric transmission projects awarded under an unconstitutionally enacted statute. **Affirmed.**

Waterman, J., delivered the opinion of the court, in which all participating justices joined. McDermott, J., took no part in the consideration or decision of the case.

Brenna Bird, Attorney General; Patrick C. Valencia (argued), Deputy Solicitor General; and Daniel J. Johnston (until withdrawal) and David M. Ranscht, Assistant Attorneys General, for appellants State of Iowa, Iowa Utilities Board, and Geri Huser.

Michael R. Reck (argued) and Christopher J. Jessen of Belin McCormick, P.C., Des Moines, for appellees.

Bret A. Dublinske (argued), Lisa M. Agrimonti, and Brandon R. Underwood of Fredrikson & Byron, P.A., Des Moines, for intervenor-appellant ITC Midwest, LLC.

Tara Z. Hall and Elizabeth R. Meyer of Dentons Davis Brown PC, Des Moines, for intervenor-appellant MidAmerican Energy Company.

Amanda A. James and Dennis L. Puckett of Sullivan & Ward, P.C., West Des Moines, for amicus curiae Midcontinent Independent System Operator, Inc.

Kelly A. Cwiertny of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for amicus curiae Resale Power Group of Iowa.

**Waterman, Justice.**

In this appeal, we must decide whether the district court erred by enjoining the appellants, two incumbent Iowa utilities and the Iowa Utilities Board (IUB),[1] from proceeding with certain electric transmission projects. The incumbents were awarded the projects in 2022 without competition under an unconstitutionally enacted statute, Iowa Code section 478.16 (2020). That statute granted the incumbents a so-called right of first refusal (ROFR)[2] that blocked the appellee, a qualified nonresident transmission company, from competing. No party appeals the district court's 2024 final judgment declaring section 478.16 unconstitutional under the title and single-subject requirements of article III, section 29 of the Iowa Constitution. Rather, this appeal is limited to the scope of the district court's remedy for that constitutional violation. Specifically, the appellants argue that the district court could not "retroactively" enjoin their participation in projects that a nonparty regional transmission operator had already awarded the incumbents under the ROFR while this case was pending, even though the appellee had been seeking such injunctive relief since 2020.

The appellants' unsuccessful, self-contradictory litigation strategy delayed the ultimate, now-final state judicial determination of the statute's unconstitutionality. The appellants initially persuaded the district court and court of appeals that the nonresident would-be competitor lacked standing to

---

[1]The name of this agency changed to the Iowa Utilities Commission while this case was pending. For consistency, we will continue to refer to it as the IUB in this opinion.

[2]"ROFR" is a misnomer for what is really a "right of preemption" because under section 478.16, the incumbent was automatically entitled to take on the project if it chooses, without matching a competitor's bid. But we will continue to use the term ROFR as it has been used by the parties throughout this litigation. *See LS Power Midcontinent, LLC v. State* (*LS Power I*), 988 N.W.2d 316, 323 n.2 (Iowa 2023).

challenge the statute because no transmission projects had yet been approved, even while the incumbents themselves simultaneously pursued such projects. In 2022, just two weeks after the court of appeals decision, the multi-billion-dollar projects at issue were announced. Several months later, the incumbents exercised their ROFR rights to claim the projects. A few months after that, we vacated the court of appeals decision, reversed the district court, and held that the nonresident competitor had standing to challenge section 478.16. *LS Power Midcontinent, LLC v. State* (*LS Power I*), 988 N.W.2d 316, 333, 339–40 (Iowa 2023). We also temporarily enjoined enforcement of the ROFR pending a final determination of its constitutionality on remand. *Id.* The district court then found the statute unconstitutional and granted relief "to correct its earlier error" by enjoining the appellants from participating in the projects awarded in 2022. We retained this appeal from that injunction. Meanwhile, physical construction has not yet begun on the projects at issue.

On our review, we affirm the district court's judgment and permanent injunction. We hold that section 478.16's ROFR was void ab initio due to the unconstitutional manner of its enactment. The district court, as a matter of Iowa law, properly enjoined the *parties* from participating in projects awarded pursuant to the ROFR in 2022 while this injunction action was pending and they were on notice of the pending constitutional challenge. As we explain below, the appellants' state law arguments to lift the injunction lack merit.

The appellants also contend that regardless of our resolution of the state law issues, they may nevertheless proceed with those projects as a matter of federal law without competitive rebidding. We do not decide such issues and defer to the Federal Energy Regulatory Commission (FERC) to decide any

remaining issues of federal law governing the projects at issue awarded in 2022. The parties should seek any further relief with FERC in a federal forum.

## I. Background and Facts and Proceedings.

We provided a thorough discussion of the background facts and prior proceedings in *LS Power I*, 988 N.W.2d at 322–29. We will continue to refer to the plaintiffs LS Power Midcontinent, LLC, and Southwest Transmission, LLC, collectively as LSP. As we noted before, LSP is "among the few entities with the capital and expertise to compete for upcoming upgrades to the electric grid" financed through the massive bipartisan infrastructure bill and Inflation Reduction Act. *Id.* at 322. Because competition lowers the costs of expanding the electrical grid, FERC eliminated ROFRs as a federal requirement in 2011. *Id.* at 323. But states remained free to enact their own ROFRs to benefit incumbent utilities. *Id.* High-voltage interstate electric transmission projects are regulated by both state and federal agencies:

> The [IUB] regulates the siting and construction of electric transmission lines in our state pursuant to Iowa Code chapter 478. The [FERC] regulates interstate, high-voltage transmission. FERC in turn oversees regional transmission organizations (RTOs). Each RTO coordinates, controls, and monitors the power grid within its region of service. This authority includes planning and approving new transmission projects to be carried out by private entities. Two RTOs, Midcontinent Independent System Operator (MISO) and Southwest Power Pool (SPP), serve Iowa. Missouri-based LSP actively develops, constructs, and manages electric transmission projects in the territory of these two RTOs.

*Id.*

In a truncated session during the COVID-19 pandemic, the Iowa Legislature enacted the ROFR, which LSP promptly challenged in this declaratory judgment action filed in October 2020. LSP claimed that the ROFR had been unconstitutionally enacted in violation of the single-subject and title

requirements of article III, section 29 of the Iowa Constitution. LSP sought a temporary injunction to preserve the status quo and prevent the ROFR from going into effect for any projects. Two incumbent utilities that had lobbied for the ROFR, MidAmerican Energy Company (MidAmerican) and ITC Midwest LLC (ITC), promptly intervened in the litigation. The IUB, MidAmerican, and ITC resisted LSP's motion for injunction and moved to dismiss LSP's declaratory judgment action. They argued that LSP lacked standing to challenge the ROFR because no projects had been approved. LSP resisted their motions to dismiss, arguing that various projects were in the planning stages. The district court denied any injunctive relief and dismissed LSP's action for lack of standing. LSP filed a motion to reconsider and identified specific projects as imminent. The district court denied the motion, and LSP appealed. We transferred the case to the court of appeals.

In July 2022, the court of appeals affirmed the district court's dismissal for lack of standing, stating that LSP "swung before the pitch and cannot satisfy the injury-in-fact prong of our standing test." *LS Power Midcontinent, LLC v. State*, No. 21–0696, 2022 WL 2553177, at *6 (Iowa Ct. App. July 8, 2022), *vacated*, 988 N.W.2d 316. LSP applied for further review. While LSP's application for further review was pending, MISO approved the Long-Range Transmission Projects (LRTP) Tranche 1. On October 14, ITC and MidAmerican filed notices with the IUB exercising their ROFR rights to take on the LRTP Tranche 1 projects. Meanwhile, in November, we granted LSP's application for further review, and in March 2023, we filed our opinion vacating the court of appeals decision and reversing the judgment of the district court. *LS Power I*, 988 N.W.2d at 340. We held that LSP has standing, noting that "[t]he more fitting baseball analogy is that the enactment of section 478.16 took [LSP] off the ball field before

the game began." *Id.* at 322. We concluded that LSP's constitutional challenge is likely to succeed on the merits. *Id.* at 334–40. We remanded the case to the district court "to finally decide the merits of LSP's constitutional claims." *Id.* at 340. And we granted LSP's motion for a temporary injunction "staying enforcement of section 478.16 pending resolution of this case." *Id.*

In December, the district court granted LSP's motion for summary judgment, declaring section 478.16's ROFR unconstitutional because of the violations of the single-subject and title requirements of article III, section 29 during its enactment. The district court entered a permanent injunction preventing enforcement of the ROFR going forward and preventing ITC, MidAmerican, and the IUB from participating in the LRTP Tranche 1 projects awarded under the ROFR unless the projects are rebid competitively. The IUB, MidAmerican, and ITC appealed the injunction to the extent it applied to projects awarded prior to December 2023.

While their appeals were pending, MISO performed a "variance analysis," which it completed and published in August 2024. The analysis concluded that "all facilities and assignments listed in the current LRTP Tranche 1 . . . will remain unchanged."

As noted, no party has appealed the district court's ruling that the ROFR is unconstitutional because it was enacted in violation of the title and single-subject requirements of article III, section 29 of the Iowa Constitution. Nor does any party appeal the scope of the district court's injunctive relief permanently staying enforcement of the 2020 ROFR as to future projects. The fighting issue in this appeal is limited to the validity of the district court's

injunction as to the Tranche 1 projects awarded in 2022. We quote the permanent injunction in full:

> **IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that the Court permanently enjoins operation or enforcement of Iowa Code § 478.16 and Iowa Administrative Rule 199—11.14. They shall be given no legal effect and shall provide no rights or authority to anyone claiming any rights under either Iowa Code § 478.16 or Iowa Administrative Rule 199—11.14.
>
> **IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that to prevent injury to Plaintiffs and return to the status quo prior to Iowa Code § 478.16's and Iowa Administrative Code rule 199—11.14's enactment, the [IUB] is permanently enjoined from taking any additional action, or relying on prior actions, related to any and all electric transmission line projects in Iowa that were claimed pursuant to, under, or in reliance on Iowa Code § 478.16 and/or Iowa Administrative Code rule 199—11.14. Such projects include [the Tranche 1 LRTP projects].
>
> **IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that to prevent injury to Plaintiffs and return to the status quo prior to Iowa Code § 478.16's and Iowa Administrative Code rule 199—11.14's enactment, Intervenors MidAmerican Energy Company and ITC Midwest LLC are permanently enjoined from taking any additional action, or relying on prior actions, related to any and all electric transmission line projects in Iowa that were claimed pursuant to, under, or in reliance on Iowa Code § 478.16 and/or Iowa Administrative Code rule 199—11.14. Such projects include [the Tranche 1 LRTP projects].
>
> **IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that this permanent injunction does not prohibit the Intervenors, if reassigned the above referenced projects, through competitive processes or otherwise in a manner not relying on claimed existence of § 478.16, from seeking approval from the State to move forward with the previously claimed projects.

The appellants argue that our court should vacate the district court's "retroactive" injunctive relief in the final three paragraphs quoted above. They contend that the district court could only order prospective relief as a remedy for violations of the Iowa Constitution. They also argue that the district court could not enjoin the projects awarded in 2022 because MISO is not a party in this case

and the Tranche 1 projects were awarded before our court granted a temporary injunction in 2023 and before the ROFR was ultimately declared unconstitutional and permanently enjoined in 2024. They contend that the equities cut against retroactive relief because ITC and MidAmerican have invested considerable funds and delaying these important transmission projects would harm the public. They further argue that federal law preempts state court interference with the Tranche 1 projects and that LSP is limited to seeking relief with FERC, which they contend has exclusive jurisdiction over those projects. The IUB also argues that LSP could only challenge the agency rule implementing the ROFR through a proceeding under the Iowa Administrative Procedure Act. *See* Iowa Code chapter 17A. ITC also contends that the district court erred by denying MISO leave to file its amicus brief.

LSP defends the injunction as a proper remedy for the violation of the Iowa Constitution. According to LSP,

> This case now is largely limited to a simple question. When Intervenors seized projects under a statute they knew was challenged as unconstitutional, do they get to keep what they took or may the judiciary, in its role enforcing the Constitution, prevent harm when the Act ultimately is found to have been unconstitutionally enacted?

LSP notes that its adversaries hypocritically argued for years that LSP lacked standing to challenge the ROFR because no projects were imminent even as they pursued those projects themselves and now claim it is too late to grant LSP relief because they were already awarded projects under that ROFR.

LSP argues that Iowa Code section 478.16 was void ab initio such that any projects awarded under its ROFR must be re-opened for competitive bidding. According to LSP, the district court's judicial determination properly vacated the IUB's ROFR rule without a need for a separate proceeding under chapter 17A.

LSP argues that the district court's injunctive relief was not ordered too late because physical construction has not yet begun and the intervenors themselves had previously argued that LSP could seek relief if and when projects were awarded but lacked standing before then. LSP contends that the district court could enjoin the IUB, MidAmerican, and ITC as parties even though MISO was never joined as a party in this action. LSP views MISO's amicus brief in district court as untimely and disallowed under the rules of civil procedure. LSP observes that both FERC and Iowa courts have subject matter jurisdiction over challenges to these electric transmission projects.

We retained the case.

**II. Standard of Review.**

"We review the district court's order issuing a permanent injunction de novo." *City of Okoboji v. Parks*, 830 N.W.2d 300, 304 (Iowa 2013). We review de novo the remedies awarded for violation of the single-subject and title requirements of article I, section 29 of the Iowa Constitution. *See State v. Taylor*, 557 N.W.2d 523, 525–27 (Iowa 1996).

"We review subject matter jurisdiction rulings for correction of errors at law." *Schaefer v. Putnam*, 841 N.W.2d 68, 74 (Iowa 2013). "A 'court has inherent power to determine whether it has jurisdiction over the subject matter of the proceedings before it.' " *UE Loc. 893/IUP v. State*, 928 N.W.2d 51, 59 (Iowa 2019) (quoting *Segura v. State*, 889 N.W.2d 215, 219 (Iowa 2017)).

**III. Analysis.**

We must determine whether the district court erred by enjoining MidAmerican, ITC, and the IUB from taking further action in the Tranche 1 projects awarded in 2022 under the unconstitutional ROFR in Iowa Code section 478.16. We begin by addressing our state court subject matter

jurisdiction to permanently enjoin a state statute enacted in violation of the Iowa Constitution despite the presence of federal regulation. We conclude that the injunctive relief granted by the district court falls within its subject matter jurisdiction. Next, we analyze whether the district court could "retroactively" enjoin the parties from participating in projects already awarded before a final judicial determination that section 478.16 was unconstitutionally enacted. We hold that the ROFR was void ab initio, and we affirm the permanent injunction entered against the *parties* as to which injunctive relief had been sought and improperly denied before they obtained those projects under that ROFR. We reject the IUB's argument that its agency rule implementing the ROFR could only be challenged in a proceeding under chapter 17A. We also decline to grant relief for the district court's denial of MISO's untimely amicus brief. Finally, we defer remaining questions of federal law to FERC to decide.

**A. Subject Matter Jurisdiction.** ITC argues that the Federal Power Act (FPA) "vests exclusive subject-matter jurisdiction for any challenge to a FERC decision with FERC in the first instance and then with the federal courts of appeals." We disagree. We have subject matter jurisdiction over this case because it involves issues that federal law has explicitly left to the states.

It is well understood that the FPA "leav[es] room for state regulation." *NextEra Energy Cap. Holdings, Inc. v. Lake*, 48 F.4th 306, 312 (5th Cir. 2022). As the Supreme Court observed,

> The [FPA] makes federal and state powers "complementary" and "comprehensive," so that "there [will] be no 'gaps' for private interests to subvert the public welfare." Or said otherwise, the statute prevents the creation of any regulatory "no man's land." Some entity must have jurisdiction to regulate each and every practice that takes place in the electricity markets . . . .

*FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 289 (2016) (second alteration in original) (citation omitted) (first quoting *Federal Power Comm'n v. La. Power & Light Co.*, 406 U.S. 621, 631 (1972); and then quoting *Federal Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 365 U.S. 1, 19 (1961)). Iowa law thus has a role to play in electric transmission, and Iowa courts have a say in determining the remedy for violations of the Iowa constitution.

"The [FPA] gives FERC jurisdiction over the rates for the transmission of electric energy and sale of electric energy at wholesale in interstate commerce." *Cherokee Cnty. Cogeneration Partners, LLC v. FERC*, 40 F.4th 638, 641 (D.C. Cir. 2022) (citing 16 U.S.C. § 824(a)–(b)). "FERC reviews those rates to ensure they are 'just and reasonable' and that they do not 'grant any undue preference or advantage' or 'subject any person to any undue prejudice or disadvantage.' " *Id.* (quoting 16 U.S.C. § 824d(a), (b), (e)).

On the other hand, "the states retain authority over the location and construction of electrical transmission lines." *Ill. Com. Comm'n v. FERC*, 721 F.3d 764, 773 (7th Cir. 2013). This is why we previously observed that FERC "left the door open to the state ROFR at issue here." *LS Power I*, 988 N.W.2d at 323. Indeed, the order from FERC removing federal ROFRs explicitly acknowledged the "longstanding state authority over certain matters that are relevant to transmission planning and expansion, such as matters relevant to siting, permitting, and construction." Transmission Planning & Cost Allocation by Transmission Owning & Operating Public Utilities, 76 Fed. Reg. 49,841, 49,861 (July 21, 2011). And FERC recognized our court's role in determining state law issues in this very case when it granted ITC's request for an "abandoned plant incentive" that allows recovery of costs if ITC is unable to complete its Tranche 1

projects. *ITC Midwest, LLC,* 184 F.E.R.C. ¶ 61,083, 2023 WL 5093850, at *12 (Aug. 8, 2023).

The issues in this appeal concern the location and construction of transmission facilities. FERC requires MISO to adhere to state ROFR statutes. *LS Power I,* 988 N.W.2d at 323. Exercising this state authority, the Iowa legislature enacted section 478.16. The validity of this state ROFR is a state law issue subject to our review. The constitutionality of that enactment is a matter within Iowa state court subject matter jurisdiction, and so too is the remedy for that violation.

**B. The Proper Remedy for the Iowa Constitutional Violation.** The appellants argue it is too late to enjoin their participation in the Tranche 1 projects because the incumbents were awarded those projects under the ROFR before the ROFR was declared unconstitutional. We disagree.

In our view, a statute enacted in violation of the title and single-subject requirements of article III, section 29 is a statute that is void ab initio. In *State v. Taylor*, we held that a criminal statute enacted in violation of those requirements "is void and unenforceable," and we therefore vacated the defendant's conviction that preceded the adjudication invalidating the statute. 557 N.W.2d at 527. We concluded that a "successful challenge [under the title or single-subject requirements] invalidates the defective portion of the legislation, a result that inures to the benefit of others adversely affected." *Id.* at 526.

The North Dakota Supreme Court recently reiterated that a "claim that a statute on its face violates the constitution is a claim that the Legislative Assembly exceeded a constitutional limitation in enacting it, and the practical result of a judgment declaring a statute unconstitutional is to treat it 'as if it never were enacted.'" *City of Fargo v. State,* 14 N.W.3d 902, 907 (N.D. 2024)

(quoting *SCS Carbon Transp. LLC v. Malloy*, 7 N.W.3d 268, 273 (N.D. 2024)); *see also In re N.G.*, 115 N.E.3d 102, 123 (Ill. 2018) ("When a statute is found to be facially unconstitutional in Illinois, it is said to be void *ab initio* . . . ."); *Mothering Just. v. Att'y Gen.*, ___ N.W.3d ___, ___, 2024 WL 3610042, at \*14 (Mich. July 31, 2024) (en banc) ("This Court applies the 'general rule of statutory interpretation that an unconstitutional statute is void *ab initio*.' " (quoting *Stanton v. Lloyd Hammond Produce Farms*, 253 N.W.2d 114, 117 (Mich. 2024))); *St. Louis Police Officer's Ass'n v. St. Louis County*, 670 S.W.3d 86, 91 (Mo. Ct. App. 2023) ("It is the general rule that legislation which is unconstitutional is void *ab initio*." (quoting *State ex rel. Pub. Def. Comm'n v. Cnty. Ct.*, 667 S.W.2d 409, 413 (Mo. 1984) (en banc))); *Commonwealth v. Stanley*, 259 A.3d 989, 992 (Pa. 2021) ("[A] statute which is stricken for constitutional infirmity must be regarded as void *ab initio* and treated as if it never existed." (alteration in original) (footnote omitted) (quoting *Commonwealth v. McIntyre*, 232 A.3d 609, 613 (Pa. 2020))). We reach the same conclusion as to Iowa Code section 478.16 and hold that the statute's ROFR is void ab initio due to the flawed method of its enactment.

We recognize that there has been a move away from strict application of "the void ab initio approach . . . when there has been reliance on an ordinance that has given rise to vested rights." *Edwards v. Allen*, 216 S.W.3d 278, 291 (Tenn. 2007); *see also Perlstein v. Wolk*, 844 N.E.2d 923, 931 (Ill. 2006) ("[A]t least one legal scholar has recognized that, in light of the injustice and inconvenience which may follow when the void *ab initio* doctrine is strictly applied, the 'modern trend' is away from void *ab initio* toward a more equitable and realistic approach . . . ." (citing 1 Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 2:7, at 47–49 (6th ed. 2002))). But that trend is not an absolute rejection of the void ab initio rule. Rather, it merely recognizes the

court's equitable power to temper the rule based on a particular party's "reasonableness and good-faith reliance on the purportedly valid statute." *Perlstein*, 844 N.E.2d at 931 ("The circumstances under which state courts have found it appropriate to reject the void *ab initio* doctrine, in favor of a more realistic and equitable approach, are varied."). Thus, "[t]he issue is not so much a matter of applying or not applying the void *ab initio* doctrine, as it is determining whether a particular set of circumstances justifies a court's exercise of its equitable powers to ameliorate the doctrine's sometimes harsh results." *Id.* at 933.

Following the modern trend in this case disregards a separate point. Typically, when a party challenges the validity of an enactment *before* action is taken under the enactment and injunctive relief is wrongfully denied to that party, the remedy is to grant injunctive relief where possible dating back to the date of the challenge.

Thus, under Iowa precedent, a timely appeal challenging the validity of the law will defeat a claim that rights had vested under the law before the challenge succeeded. For example, consider *Grandview Baptist Church v. Zoning Board of Adjustment*, 301 N.W.2d 704 (Iowa 1981). There, a contractor hired by a church obtained a building permit from the City of Davenport "to construct a steel storage building on its church grounds." *Id.* at 706. Neighbors objected and timely appealed, "but before their appeal was heard the building had been constructed." *Id.* at 709. The Church argued that the neighbors were estopped because the building had already been constructed and the Church "has vested rights in the building." *Id.* We disagreed and held that "[u]nder such circumstances the Church cannot successfully invoke the doctrine of vested rights so as to deprive the objectors of the fruits of their appeal"—"[o]therwise

the right of appeal would be meaningless." *Id.* The remedy was to remove the building. *Id.*; *see also United States v. Bailey*, 571 F.3d 791, 805–06 (8th Cir. 2009) (affirming an injunction requiring the defendant to remove a road he constructed in wetlands without a permit required by the Clean Water Act); *Carroll Airport Comm'n v. Danner*, 927 N.W.2d 635, 654–55 (Iowa 2019) (affirming permanent injunction requiring removal of twelve-story grain leg constructed without proper approvals in flight path for airport runway); *Incorporated City of Denison v. Clabaugh*, 306 N.W.2d 748, 756 (Iowa 1981) (requiring defendant to comply with zoning ordinance even if this requires reconstructing the building); *Kamp v. Stebens*, 517 N.W.2d 227, 230 (Iowa Ct. App. 1994) (affirming injunction requiring garage to be rebuilt to conform to zoning height restriction after owner's prior variance was declared illegal). We reiterate that violations of the Iowa Constitution may be remedied through "[m]eaningful backward-looking relief." *Kragnes v. City of Des Moines*, 810 N.W.2d 492, 511 (Iowa 2012); *see also Hagge v. Iowa Dep't of Revenue & Fin.*, 504 N.W.2d 448, 450–52 (Iowa 1993) (en banc) (holding constitutional violation required postdeprivation tax refund remedy).

Under Iowa law, MidAmerican and ITC lack vested rights in the Tranche 1 projects awarded under the ROFR in 2022. First, they were on notice of LSP's constitutional challenge to the ROFR since 2020. They should have known their argument that LSP lacked standing because no projects were imminent was fatally inconsistent with their ongoing efforts to land the projects through the ROFR while the litigation remained pending. And unlike the Grandview Baptist Church building that was completed before the objectors' appeal succeeded, no physical construction has begun on the Tranche 1 projects. As LSP's counsel aptly stated at oral argument, "As far as I know, no spade of dirt has been

turned." And ITC's counsel acknowledged that "[t]here are no actual new towers built on Tranche 1." Any reliance the incumbents placed on the ROFR was misplaced. They have been represented by competent counsel and took their chances on the ROFR's possible invalidity with eyes wide open. The law is well established on this point:

> A defendant who proceeds to do the things complained of after notice of a suit to enjoin them cannot defeat the injunction on the ground that the acts sought to be restrained have already been done. In such circumstances, a preliminary mandatory injunction may be issued to restore the status quo as it existed before the defendant acted.

42 Am. Jur. 2d *Injunctions* § 3, at 610 (2020) (footnote omitted). The same rationale applies to a permanent injunction.

A party seeking a permanent injunction must establish that "(1) an invasion or threatened invasion of a right; (2) that substantial injury or damages will result unless the request for an injunction is granted; and (3) that there is no adequate legal remedy available." *City of Okoboji*, 830 N.W.2d at 309 (quoting *Sear v. Clayton Cnty. Zoning Bd. of Adjustment*, 590 N.W.2d 512, 515 (Iowa 1999)). Under our de novo review, we find that the district court properly considered the requirements for issuance of this permanent injunction, including weighing the relative hardship to each party. *See id.* All three elements have been established. First, the unconstitutionally enacted ROFR violated LSP's right to compete for the Tranche 1 projects. Second, the district court correctly determined that the injunction is necessary to "prevent substantial injury and damage to [LSP]." Indeed, LSP's harm can only be remedied by rebidding those projects competitively. Third, "[n]either the State nor the Intervenors argue[d] LSP has an adequate remedy at law through a cause of action for money damages on projects where it was wrongfully prevented from bidding." *LS Power I*,

988 N.W.2d at 338. By contrast, in weighing the relative hardships, ITC and presumably MidAmerican can recover their costs under FERC's abandoned plant incentive. MISO could rebid the projects, and ITC or MidAmerican would be unharmed if they end up the winning bidders. And if they are not the winning bidders, that suggests the public was indeed harmed by the lack of competition in 2022.

The district court correctly determined that the injunction grants LSP "long delayed justice." ITC and MidAmerican relied on an unsuccessful "no standing" litigation posture that led to a multi-year delay in the ultimate judicial determination of the ROFR's unconstitutionality. Along the way, while claiming LSP lacked standing because no projects were imminent, they pursued those projects themselves and argued in the first appeal that LSP jumped the gun but could get relief later if and when projects were awarded. They argue the opposite now. We decline to reward their unfair delaying tactics by denying LSP injunctive relief for the Tranche 1 projects awarded in the interim. *Cf. Chicoine v. Wellmark, Inc.*, 2 N.W.3d 276, 286–87 (Iowa 2024) (discussing judicial estoppel).

It is well established that rebidding is the proper remedy when competitive bidding requirements are not followed. *See, e.g.*, *O'Donnell Const. Co. v. District of Columbia*, 963 F.2d 420, 429 (D.C. Cir. 1992) ("[A]gencies are routinely enjoined to redo the bidding process, in order to vindicate the disappointed bidder's right to a legally valid procurement process."); *John W. Danforth Co. v. Veterans Admin.*, 461 F. Supp. 1062, 1072–73 (W.D.N.Y. 1978) (ordering rebidding process because defendants "were expecting the lawsuit and an injunction" and had moved with "undue speed" to obtain the contracts prior to litigation).

ITC and MidAmerican nevertheless argue that injunctive relief is improper because MISO is not a party to this lawsuit and therefore cannot be directly enjoined. That argument overlooks the court's power to enjoin MidAmerican and ITC, who chose to intervene as parties in this action. A comparison to employment law is helpful in understanding why the district court properly enjoined the intervenors from proceeding with projects they were unlawfully awarded by MISO, a nonparty. In actions to enforce noncompete agreements, it is well established that injunctive relief can be ordered against the parties even when the defendant's prospective employer is not a party. *See, e.g., Farm Bureau Serv. Co. of Maynard v. Kohls*, 203 N.W.2d 209, 212 (Iowa 1972) (holding that the noncompete agreement could be enforced without joining the new employer); *see also* Frank Harty & Ryan Stefani, *Drafting and Enforcing Non-Compete Clauses in Iowa: A Thirty-Year Review*, 64 Drake L. Rev. 325, 367 & n.322 (2016) ("The plaintiff may, for tactical reasons, choose to exclude the new employer . . . ."). We reach the same conclusion here and hold that MISO is not an indispensable or necessary party in this action.

For those reasons, we affirm the district court's permanent injunction under Iowa law, including the Tranche 1 projects.

**C. Whether a Separate Challenge Under Iowa Code Chapter 17A Was Required.** The IUB challenges the district court's injunction against enforcement of Iowa Administrative Code rule 199—11.14 on the grounds that LSP had to first exhaust its remedies under Iowa Code chapter 17A. We disagree. The IUB promulgated that rule under Iowa Code section 478.16 to implement the ROFR. *See* Iowa Admin. Code r. 199—11.14(1) ("The purpose of this rule is to implement the requirements of Iowa Code section 478.16."). The judicial determination that

section 478.16 was unconstitutionally enacted automatically invalidated the rule without a separate challenge in proceedings under chapter 17A.

Iowa Code chapter 17A generally provides "the exclusive means by which a person or party who is aggrieved or adversely affected by agency action may seek judicial review of such agency action." Iowa Code § 17A.19. Not so here. In *Tindal v. Norman,* we addressed a similar scenario. *See* 427 N.W.2d 871 (Iowa 1988). There, a plaintiff sought to invalidate an action taken by the Iowa Department of Human Services under a statute that the plaintiff challenged as unconstitutional. *Id.* at 872. The agency argued that the plaintiff's claim could only be brought under chapter 17A in the first instance. *Id.* The district court agreed and dismissed the case. *Id.* On appeal, we reversed and held that the plaintiff's challenge could proceed. *Id.* at 874.

> We recognize that generally the exhaustion of administrative remedies must precede judicial review in cases of this type. In order for the exhaustion doctrine to apply, however, an adequate administrative remedy must exist which was intended to be exclusive. Here, the plaintiff challenges the facial constitutional validity of the statute under which the defendant was proceeding. We have said that, because agencies cannot decide issues of statutory validity, administrative remedies are inadequate within the meaning of section 17A.19(1) when such a statutory challenge is made. Accordingly, the exhaustion doctrine does not bar plaintiff's action.

*Id.* at 872–73 (citations omitted). The same situation is presented in this case. LSP commenced this declaratory judgment action challenging the constitutionality of section 478.16's ROFR before the IUB promulgated the rule implementing the ROFR while this action was pending. Under *Tindal,* this challenge entitles LSP to simultaneously challenge agency action taken under the authority of the allegedly unconstitutional statute without first exhausting administrative remedies with the agency. *Id.* We conclude that under these

circumstances, the district court had the power to enjoin Iowa Administrative Code rule 199—11.14 in this action without the need for a corresponding challenge under chapter 17A that could not have provided the requested relief.

We also affirm the district court's injunction on another ground. Iowa Code section 17A.7(4) provides:

> 4. *a.* . . . [I]f a statute granting an agency authority to adopt a rule or portion of a rule is determined by a court of competent jurisdiction to be unconstitutional or to be invalid on other grounds, the agency . . . shall notify the administrative code editor in writing of the court's decision. . . .
>
> *b.* As soon as practicable after receiving such notification, the administrative code editor shall publish notice in the Iowa administrative bulletin of the court's decision and . . . *remove the rule or portion of the rule from the Iowa administrative code.*

(Emphasis added.) In this case, the district court struck down section 478.16 as unconstitutional. That ruling was not appealed and is final. The district court correctly determined that the rule is unenforceable. *See Mid-Am. Pipeline Co. v. Iowa State Com. Comm'n,* 114 N.W.2d 622, 624 (Iowa 1962) (holding that the agency "has no right to put into effect unconstitutional provisions of a statute").

**D. Denial of MISO's Amicus Brief in District Court.** ITC argues that the district court erred by denying MISO's motion for leave to file an amicus brief supporting ITC's motion to reconsider the permanent injunction ruling. We disagree. The district court had already granted LSP's motion for summary judgment and injunctive relief. The rules of civil procedure do not address amicus briefing in district court. Regardless of whether a district court in its discretion might elect to allow briefing by an amicus, there is no authority holding that denying an amicus brief entitles a party to reversal of the court's adjudication on the merits. MISO was allowed to file an amicus brief on appeal, which we have carefully considered.

**E. Federal Preemption.** Following the district court's December 2023 grant of summary judgment and permanent injunction, and while the present appeal was pending, MISO conducted a "variance analysis" and concluded that "all facilities and assignments listed in the current LRTP Tranche 1 . . . will remain unchanged." MidAmerican and ITC argue that this analysis is subject only to FERC review and preempts our ability to affirm the district court's injunction as to Tranche 1 projects.

We are puzzled by this argument. Our court, as already discussed, certainly has the ability to affirm an injunction of an Iowa district court blocking parties from acting pursuant to an Iowa statute that was adopted in violation of the Iowa Constitution. MISO is a private entity and lacks the authority to tell us how to interpret and apply Iowa law.

At the same time, the validity of MISO's variance analysis has not been adjudicated in this state court proceeding. We are not the entity charged with reviewing MISO's actions; FERC is. The parties should seek any further relief with FERC in a federal forum.

**IV. Disposition.**

For the foregoing reasons, we affirm the judgment of the district court and its permanent injunction.

**Affirmed.**

All justices concur except McDermott, J., who takes no part.